Good morning, Your Honors, Counsel. May it please the Court, my name is Krista Hart. I represent Tobias Vigil, appellant in this case. My goal here is to reserve three minutes for rebuttal. In your order last week, you asked us to consider and address the standard of review that should be applied when the allegation in the appeal is that the waiver was not knowing and not intelligent. But I would like to preface that and remind the Court that as to charge 1 in this case, Mr. Vigil did not actually waive his right to a hearing. He actually, within the stipulation that the government counsel and defense counsel entered into and presented to the district court, Mr. Vigil actually maintained his innocence as to that charge. Did he enter something sort of like an Alford plea, sort of said, well, you've got enough, you've probably got enough evidence to get me, but I'm not going to give you the satisfaction of confessing here because it will have collateral consequences in the State proceedings? In a way, he acquiesced to what his defense attorney proffered. So an Alford plea, though — It's not strictly an Alford plea, but it's the closest equivalent, it's the closest analogy I can come to to what you did. Certainly, and I agree with that. But the problem here is that even in an Alford plea, I think the district court would engage in a colloquy with the defendant to ensure that the defendant knew what rights he or she was giving up by entering the Alford plea. So simply because it's an Alford plea doesn't mean that those rights go away or aren't necessary. But what's the source of your client's right to have a colloquy? Well, that would be Rule 32.1, which indicates that the — an accused in the context of a revocation hearing has the right to certain procedures unless waived. But things — but people have — defendants have constitutional rights for all kinds of things, constitutional rights, not just rule-based rights. So, for example, your client in a trial would have the right to cross-examine a witness. But his lawyer can stand up and say, I have no questions of this witness, and we don't have to stop the proceedings to ask whether the client knows that he is voluntarily and — and his intelligently and knowingly and voluntarily waiving his right to cross-examination granted under the — under the Constitution. And I would submit if that's what happened in this case, we would be in a different situation. But that's not what happened in this case. In this case, government — or, I'm sorry, defense counsel entered into a, quote-unquote, stipulation that the government could meet its burden of proof at a hearing instead of forcing the government to put that evidence on before the district judge. But that happens all the time. Why is that cause for — why should that be cause for concern with us? Because lawyers stipulate on behalf of their clients all the time. Sure. They stipulate to specific or discrete issues, typically within a trial. You know, can this evidence come in? Can the government lay the foundation for this business record to come in? Yes. We'll stipulate they can. Sure. But this is an individual giving up their own personal rights. This is not simply a procedure at trial. And a plea agreement, for instance, the defendant will give up a right to appeal. Absolutely. And the attorney makes that representation to the court. Well, the court typically engages the defendant and asks, is that what you want to do? And the defendant signs a plea agreement that says that. So in — Your client was present at all of these hearings. Certainly. He's standing right there. Certainly. And nobody says a peep. He doesn't change his mind later on. Counsel doesn't come back and say, I may have overstepped my bounds here. My client's unhappy. He doesn't come back later on and say, you know, my client has had second thoughts about this, and I've spoken with him, and now I think that maybe — maybe I failed to explain this adequately, but it was not a knowing involuntary waiver of his 32.1 right. Never happens. No, it doesn't happen in this case. But that's placing the burden on a defendant to understand the criminal rules of procedure. This one wasn't — just wasn't that hard, because the only thing that was at issue — there were two — well, there were two things at issue. One, was he drinking? Two, you know, was he guilty of driving under the influence? And as to the drinking, which is the one that he concedes fully, it just wasn't that hard to prove. And all he's done is save himself and the government some trouble in proving that one. But this wasn't much of a waiver. Rule 32.1 says, unless waived by the person, right? It doesn't say, unless waived by his attorney. It doesn't say — Correct. — unless it is waived in the passive voice. Unless waived by the person. Correct. So whether it's a due process right or a rule right, the rules — the literal reading of the rules suggests that the person has to be addressed and has to answer for himself, not the lawyer. Indeed. Indeed. And that was the point I was making when the judge enters into a colloquy, for example, in the context of an appeal waiver. The judge — the court will typically engage with the defendant. The defendant signs a plea agreement, acknowledges. And then, in the context of an appeal waiver, even at the end of the sentencing hearing, if the court says, you have the right to appeal, then that changes things. And then he may, indeed, have the right to appeal. On the standard of review, because no one brought to the court's attention that there was a need to personally engage with the defendant, is that subject to plain error review? I would say it is not. And the court directed us to consider certain cases. And, for example, the only case that actually specifically says anything on that is Stokes. And Stokes says the waiver — the review is for clear error. But then that case cites to the case of U.S. v. Doe, which considers waiver in the context of a Miranda violation. So I did not find any case on point that says or discusses any of the policy considerations in the context of a Rule 32.1 violation. Even in the context of Stokes, the clear error review is usually the standard we apply to findings of fact. So clear error really doesn't sort of answer the question, particularly well. Well, so the problem with applying plain error review here is — Plain error or clear error? Plain error, which is what Judge Rawlinson asked me about. In the — plain error in the Ilano case and the cases it cites, those are trial errors. When, you know, evidence is being admitted, if the defense doesn't object in a timely manner, and that's not something that is really obvious to the court, the trial continues. And then, of course, at the end of trial, on appeal, raising that as an error, sure, the district court didn't have an opportunity to consider it. In this context, though, it is the district court who is administering the colloquy, who is discussing this. It is the district court's obligation to do this. Are you arguing that this is a structural error? Because that's the only way you get around the plain error argument. No, I don't think that's necessarily true. Because, like in the context of Rule 11, if it's a non-technical — if it's a technical violation that doesn't affect the substantial rights, then you apply the harmless error analysis. So that's not structural error. Here, I would argue it's not a merely technical violation, because the district court did not — Well, you apply harmless error when the error has been brought to the attention of the court. Not necessarily in the context of a Rule 11 violation. On appeal, in the context of a Rule 11 violation, if it's a technical error and it doesn't impact substantial rights, then it's for harmless error. What in the November 2nd hearing indicates that the judge didn't do what he was supposed to do? He's actually got a colleague. He's actually talking to Mr. Vigil directly. Certainly. But he knows — He says, you've agreed to stipulate — you, through your counsel, have agreed to this stipulation. Do you understand what you're doing? He said, you would be entitled to a hearing. That's all he says, entitled to a hearing. But what does that hearing entail? The right to present evidence, the right to cross-examine witnesses, the right to — And to read Rule 32.1 to him? I don't think he had to read it to him, but he had to ask him those questions, yes. And otherwise it is structural error?  Okay. So what are we supposed to do? It's not a knowing and intelligent waiver of his right to a hearing as to charges 1 and 2 in this revocation. And they should be set aside, remanded back to the district court, to a different judge, to allow them to start afresh. And if, indeed, he does want to waive his right to a revocation hearing, a full revocation hearing, he can do that with counsel. And if he does that, then the court can ask him questions and engage in the appropriate colloquy. And I have 30 seconds left. All right. Thank you, counsel. Thank you. Good morning, and may it please the Court. Matthew Yelovich for the United States. I'd like to start with some of the questions that the Court just raised. First of all, Judge Friedman, you asked about the text of the rule. And the text of the rule does, indeed, say, unless waived by the person. However, every circuit to have looked at Rule 32.1 proceedings has held that a defense attorney can actually enter an admission on behalf of the individual, the defendant. And so if that's the case, if a defense attorney can enter an admission, thereby waiving the right to the revocation hearing, then what happened here, which was short of that, would also be included in what the defense attorney can do. Going back to what Judge Bybee raised, the proceedings do not stop every time a defense attorney makes a strategic decision on his or her client's behalf in order to determine whether the client agrees and knowingly and voluntarily wishes to proceed as counsel has directed. Instead, that's a Sixth Amendment claim that should be brought collaterally if, indeed, this attorney was acting not at the behest of her client. Well, but there are certain things that are not strategic. There are certain things that the law says must be done by the person, him or herself. The lawyer can't make the decision to plead versus going to trial, for example. So to call it a strategic thing sort of begs the question or assumes a predicate to your comment. The question is, is this strategic or is it more than strategic when the lawyer says, we don't need a hearing and we'll stipulate to this? That's correct, Your Honor. Well, outside of the Rule 11 context, this and other circuits have held that attorneys can, indeed, waive various rights on behalf of their client. And this Court has specifically held that Rule 32.1 rights can be waived. I would direct the Court to United States v. Al-Faraheen, which is 433 F. 3rd 1148. The specific site would be at page 1154, note 2. In that case, the Ninth Circuit was faced with the question of whether what had occurred was a waiver or a forfeiture below. And the Court looked specifically at what the defense attorney intended to do, not what the defendant intended to do. Now, that was not granted in a Rule 32.1 context. But various other circuits have held in context outside of Rule 11, defense attorneys act on behalf of their clients in waiving various rights. That happened as well in the Second Circuit, United States v. Spruill, and in the Seventh Circuit as well, in United States v. Richardson. And the Courts have reasoned that the safety valve on the attorney doing something without their client's knowledge or permission would be a collateral proceeding as a Sixth Amendment claim. MS. GOTTLIEB Counsel, what's your response to opposing counsel's position that plain error review does not apply to this issue? MR. GARRETT There's simply no authority for that position, Your Honor. In United States v. Minai, which is a case cited in the government's brief, it's an unpublished decision of this Court. The Court looked at whether MS. GOTTLIEB Do you have a published decision? MR. GARRETT I don't have a published decision for the proposition that plain error would not apply to this circumstance because plain error just routinely applies when a right is forfeited below. JUSTICE ALITO But this isn't a forfeiture. It's a waiver. That's what ALANO stands for. MR. GARRETT That's correct, Your Honor. And if this Court decides that it was, in fact, an intentional relinquishment of a known right, then there is no further appellate review. But even assuming that what happened below was simply a lapse in not asserting that right, then that would be a forfeiture under ALANO, which would subject what happened to plain error review. JUSTICE ALITO We have also discussed waiver of waiver. That is, that you can waiver, you can forfeit waiver. MR. GARRETT That's correct, Your Honor. JUSTICE ALITO And if this is, if the waiver question goes to was this knowing involuntary, then there's, then you, Mr. Vigil may have forfeited his right to raise the waiver if he hasn't disclosed it to the district court before he gets here. MR. VIGIL That's correct, Your Honor. In United States v. Stokes and in United States v. Perez, the two cases, two of the four cases that are cited in the Court's order from last week, in those cases, the appellant had litigated the claim below. So the appellant here is relying on Stokes. But in Stokes, the issue had been raised in the district court. Whereas, as Your Honor points out, it's way, it's raised in the context of a lawyer saying, I don't think this was a full and complete colloquy, or I don't think this was a knowing and intelligent waiver. There's some record of a colloquy or a discussion with the defendant. And the question is, you have an evidentiary record. In this case, you've got, I wouldn't call it a silent record, but a close to silent record in terms of addressing the defendant personally. MR. VIGIL I would disagree, Your Honor. I think the district court did engage in a colloquy with the defendant and, in fact, specifically advised him to, he would also, quote, also have a right to a hearing as to charge 2, in addition to the rights he was giving up as to charge 1, and asked the defendant's attorney in front of the defendant whether that attorney was going to charge 2, and whether the attorney had discussed with him the stipulation, knew what he was getting into by entering it, and whether the defendant wished for the court to accept that stipulation. And this all occurred, again, in front of the defendant. The court then accepted the stipulation upon being assured by defense counsel that that is indeed what the defendant wished to happen. And so, on that record, particularly given the colloquy of the district court with the defendant on the right to a hearing and on the, how the stipulation could cover both charges, I think it's clear that the challenge has been waived. JUSTICE GINSBURG Well, counsel, if, if we don't exercise plain error review, would it be clear error review? MR. VIGIL Well, Your Honor, clear error would apply if there were factual findings below that the defendant was then challenging on appeal. And this — JUSTICE GINSBURG Do you think that the finding that the waiver was knowing, intelligent? The court didn't make that finding, though, because there was no waiver yet. So, if it's not plain error, would it be de novo? MR. VIGIL Your Honor, there's just no authority for the proposition that, that an unobjected-to  JUSTICE GINSBURG Error? MR. VIGIL Again, if the defendant had objected below, it would be subject to harmless error review. That's what the case law says. JUSTICE GINSBURG So, your position is it's plain error or nothing? Is that your position? MR. VIGIL The government's position is, given the Court's order from last week and a review of those cases, that this was an intentional relinquishment of a known right to a hearing. That's what the stipulation was. And so there would be no review at all of that decision, even if it was not a intentional relinquishment, even if it was merely— JUSTICE ALITO So, in other words, you decide the merits, whether it was an intentional relinquishment, before you decide the standard of review? In other words, there's an argument here that your opponent is making that it wasn't an intentional relinquishment of a known right. So, if she's right, then what's the standard of review? Or if she's—because normally courts decide standards of review before they get to the merits, right? MR. VIGIL That's correct, Your Honor. When courts, particularly the Ninth Circuit, have faced the question of whether there is an intentional relinquishment of a known right or whether it was a mere forfeiture, that decision actually comes first. And then, based on the outcome of that decision, either no review applies if it was a waiver or plain error applies if it was a forfeiture. I see— JUSTICE GINSBURG We always have a standard of review when we're reviewing a district court decision. So, are you saying that if we disagree with you regarding whether or not plain error applies, you lose? MR. VIGIL No, Your Honor. JUSTICE GINSBURG But how do we procedurally proceed if we disagree with you that it's plain error review? MR. VIGIL Well, if the court wishes to proceed based on not plain error, then presumably the error below would be subject to harmless error review. But what the government's advocating is that initial step of deciding whether what in fact happened was an intentional relinquishment under Alano or merely a waiver. Courts appear to engage in that step de novo. And then, based on what happens at that step, either no further review applies or it's plain error. And there's an unpublished decision in this circuit, United States v. Rayabez, which is a 2011 case where the court explicitly said that the standard of review as to the waiver is de novo. And then after that — MS. GINSBURG I mean, I don't know about my colleagues, but unpublished decisions are not persuasive to me. So, if you don't have a published decision, I think you can save your time, at least as far as I'm concerned. MR. VIGIL Okay. Understood, Your Honor. JUSTICE ALITO Can I ask you an unrelated question, because your time is running out? And that has to do with the misadvisement of what the potential sentence is. And what struck me in reading that was Justice Alito's concurring opinion in Padilla v. Kentucky, where he said, you know, there may not be an obligation to advise on the immigration consequences. But if the court undertakes to do so, or the lawyer undertakes to do so, and gives the guy the totally wrong advice, then there have to be consequences. So, I know your time is up, but it's an important question. MR. VIGIL In that context, Your Honor, in the Rule 11 context, that makes sense, that if the court affirmatively misadvises someone as to immigration consequences the Supreme Court has held, then that plea is not knowing and voluntary. But in the Rule 32.1 context, advisements are not necessary at all under United States v. Siegel. And I know that unpublished decisions are not persuasive, but this Court faced the exact same scenario in United States v. Minai, where a defendant was advised that his maximum penalty was two years. In fact, it was five. He was given a five-year sentence by the district court, and this Court said that no plain error had occurred, and reviewed the — the standard of review was plain error in that case as well. MS. GOTTLIEB Any other questions?  VIGIL Thank you, Your Honor. MS. GOTTLIEB Thank you, counsel. Rebuttal? We'll give you a minute for rebuttal. MS. GOTTLIEB Just responding to a couple questions. The Perez case that this Court asked us to consider actually does indeed say that the district court's decision to revoke the statute of limitations of a statute of limitations is subject to process violation in a revocation hearing is subject to de novo review, and that's a public case that was cited in the order that Your Honor sent to us. So that does say it's de novo review. And second — REED Was it raised before the district court in that case? MS. GOTTLIEB Yes. REED Okay. So nobody had forfeited anything before the district court. MS. GOTTLIEB Correct. REED So the district court had a chance to enter any findings that the district court wished to do and to — MS. GOTTLIEB Correct. REED — and to correct the error if the district court thought there was an error. MS. GOTTLIEB Correct. But it referred to it as a revocation proceeding. So anything that occurs during a revocation proceeding is subject to de novo. REED Well, everything that is — I thought that you said that — you told me that it was objected to there so that the district court had a chance to do it. MS. GOTTLIEB Right. REED Does that — MS. GOTTLIEB But I'm — yes. REED It's not objected to? It's still subject to de novo review? MS. GOTTLIEB They did not make that distinction in Perez. REED Since it was — since it was — since it was objected to there, why would the court draw that distinction? MS. GOTTLIEB I'm just letting Your Honor know what Perez says. REED All right. MS. GOTTLIEB And the second thing that I would like to bring up, which the government argued, said that defense counsel can enter into an admission on behalf of a client that the client — that seems to argue that the client need not even be present, that counsel has the right to do this, and then that the — if the court asks the attorney, did you review these with your client, and the attorney says, yes, that's enough, we don't know what the attorney discussed with the client, we don't know what the attorney advised the client. MS. GOTTLIEB But the cases seem to imply that if the defendant is standing right there while the attorney makes the representation, it's assumed that the client agrees with the representations that are being made. MS. GOTTLIEB And here the representation being made was that Mr. Vigil did not admit to Charge 1. They went through this sort of unique procedure that I've never seen before, where they enter into a stipulation that the government could meet its burden, but were not admitting it, which is something I've never seen before. CHIEF JUSTICE BREYER But also there's a reason for that, because he was facing a prosecution in the State, and he didn't want — his lawyer and he, presumably, didn't want him to say, I admit it, because then that would be used as a — I don't know. MS. GOTTLIEB And that was all — that was all stated in front of him, and the judge actually has a colloquy with Vigil and says, you understand, you're stipulating to Charge 2. Yes.  GOTTLIEB Yes. CHIEF JUSTICE BREYER So what's the problem? MS. GOTTLIEB Well, the problem there, again, is it's a waiver that's not knowing or intelligent, just because you're saying — CHIEF JUSTICE BREYER Because what didn't Mr. Vigil know that he needed to know? MS. GOTTLIEB Didn't know that he could have a full hearing. He didn't know that he could present witnesses. He didn't know that he could confront and cross-examine witnesses. He didn't know that he could present evidence in mitigation. None of — I guess whether he knew that or not, we don't know. CHIEF JUSTICE BREYER Why isn't the remedy for this what the government suggests, a collateral proceeding? Why don't you file a habeas? Why isn't it for habeas? Because we don't know — we have no evidence from the attorney. We have no declaration from Mr. Vigil himself. MS. GOTTLIEB Because on this record, we do indeed know that the district court did not engage in the requisite colloquy to ensure that the rights were personally waived by Mr. Vigil. CHIEF JUSTICE BREYER Doesn't that get you back to structural — to a claim of structural error? MS. GOTTLIEB Okay. It's a structural error. CHIEF JUSTICE BREYER Okay.  GOTTLIEB All right. Thank you, counsel. MS. GOTTLIEB Thank you. CHIEF JUSTICE ROBERTS Thank you to both counsel for your helpful arguments in this case. The case just argued is submitted for a decision by the Court.
judges: Rawlinson, Bybee, Friedman